UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
YVONNE LOZADA,                                            :
                                                          :
                              Plaintiff,                  :
                                                          :        13 Civ. 7388 (JPO)
                -v-                                       :
                                                          :        OPINION AND ORDER
DELTA AIRLINES, INC.,                                     :
                                                          :
                              Defendant.                  :
------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

      Plaintiff Yvonne Lozada was removed from Delta Airlines Flight 172 prior to takeoff at JFK Airport in Queens, New York. Lozada claims that she did nothing wrong, while Defendant Delta Airlines, Inc. ("Delta") claims that she acted belligerently and repeatedly demanded free alcohol. Lozada brought suit in New York City Civil Court, Bronx County, asserting a claim for negligence. The lawsuit was removed to this Court on the basis of federal preemption. Before the Court is a motion for summary judgment filed by Delta. For the reasons that follow, that motion is granted.

**I.    Background**

    **A.    Factual Background**[1]

      On September 16, 2010, Lozada arrived at John F. Kennedy International Airport for her 7:00 p.m. Delta Air Lines flight to Miami, Florida. Per her usual custom, she arrived several hours ahead of time. The flight ended up being delayed multiple times, resulting in hours of additional wait. During this period, Lozada, a 69-year old woman just over five feet tall, visited

---

[1] The following facts are taken from Delta's Local Civil Rule 56.1 Statement and other submissions made in connection with the instant motion. They are undisputed unless otherwise indicated.

two establishments at the airport, where she consumed an unspecified amount of alcohol. Following an announcement, she proceeded to the gate area to board the plane.

The parties dispute what happened next. Lozada contends that she boarded the plane without incident, but shortly after she sat down, a member of the Port Authority Police came onboard and removed her from the aircraft. In contrast, Delta contends that prior to boarding Lozada showed clear signs of intoxication and was acting belligerently, loudly demanding free alcohol for the passengers to compensate for the delay. According to Delta, this highly disruptive behavior continued once she boarded the plane, where she made more demands for free drinks and incessantly pressed the flight attendant call button. Delta contends that such behavior continued even after the issuance of warnings from the flight crew that such actions may result in her removal from the flight. When the Captain was finally notified of the situation by flight attendant ("FA") Meadows, he instructed her to contact Port Authority Police to have Lozada removed from the plane.

Lozada was removed from the aircraft and placed in a wheelchair. She was subsequently released by security without being charged. She does not claim that she suffered any physical injury or other mistreatment by Delta employees.

B.  **Procedural Background**

Lozada initiated this action against Delta on September 13, 2013 in the Bronx County Civil Court of the City of New York, asserting a claim of negligence. Delta filed a notice of removal to this Court on October 21, 2013.[2] Delta answered the complaint on October 24, 2013.

---

[2] This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. 1331. Although the claim arises under state tort law, "the federal standard set by [49 U.S.C.] § 44902, as authoritatively interpreted by the federal courts, has become an essential element of any New York state law claim arising from an airline's refusal to transport a passenger, and this court therefore has jurisdiction over plaintiff's lawsuit." *Schaeffer v. Cavallero*, 29 F. Supp. 2d 184,

On February 28, 2014, Delta moved for summary judgment and submitted the required Local Rule 56.1 statement. Lozada did not file the required Local Rule 56.1 response, and she has not made any submissions in opposition to this motion other than her memorandum in opposition.

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden on a party moving for summary judgment is to provide evidence of each element of his claim or defense illustrating his entitlement to relief. *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant makes this showing, the burden shifts to the non-moving party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence. Fed. R. Civ. P. 56(f); *Anderson*, 447 U.S. at 250–51. The court should view all evidence "in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor," and a motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). At the same time, "[a]ny assessments of credibility and all choices between available inferences are

---

186 (S.D.N.Y. 1998); *see also Adamsons v. Am. Airlines, Inc.*, 58 N.Y.2d 42, 48, 444 N.E.2d 21 (1982).

matters to be left for a jury." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1992) (citations omitted).

Local Civil Rule 56.1 for the United States District Courts for the Southern and Eastern Districts of New York requires the moving party on a motion for summary judgment to submit a "short and concise statement" describing the material facts as to which there is no genuine issue to be tried. Local Rule 56.1(a). Parties opposing summary judgment must then respond with a corresponding statement describing what genuine issues, if any, remain. *See* Local Rule 56.1(b). The facts set forth by the moving party "will be deemed to be admitted . . . unless specifically controverted" by the opposing party's statement. Local Rule 56.1(c).

If the nonmoving party fails to comply with Local Rule 56.1(b), "a district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). In such instances, the court may either rely upon the 56.1 Statement, or elect to "conduct an assiduous review of the record" in light of the nonmoving party's failure to file. *Id.* (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)).

### III. Discussion

#### A. Local Rule 56.1

Since Lozada failed to file a response to Delta's Rule 56.1 Statement, the Court may assume that all material facts set forth in Delta's statement are uncontested. *See* Local Rule 56.1(c). While "the local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law," *Holtz*, 258 F.3d at 74, Delta has met its burden here. Delta asserts that "Delta FA Meadows observed Plaintiff being belligerent, unruly, slurring her speech, and generally appearing intoxicated." (Dkt. No. 21

("Rule 56.1 Statement") at ¶ 10; *see* Dkt. No. 20-3 ("FA Meadows Dep.") at p. 24.)  Delta further asserts that "at that point, Delta FA Meadows, concerned with the safety risk posed by Plaintiff's behavior, as well her intoxication, reported the situation to the Captain of the flight." (Rule 56.1 Statement at ¶ 12; *see* FA Meadows Dep. at pp. 28-29, 31-32.)  Each of these statements of material fact is "followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Rule 56.1(d).

On these facts, no rational jury could find in favor of Lozada.  Under the Federal Aviation Act ("FAA"), "an air carrier . . . may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety."  49 U.S.C. § 44902(b).  Since Delta asserts that Lozada's behavior was reasonably perceived by Delta employees as posing a safety risk, and there is no evidentiary basis for a jury to conclude that this belief was "arbitrary and capricious," no genuine dispute exists for jury determination.  *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 397 (S.D.N.Y. 2004) (citing *Schaeffer v. Cavallero*, 54 F. Supp. 2d 350, 351 (S.D.N.Y. 1999) ("*Schaeffer I* ")); *see also Williams v. Trans World Airlines*, 509 F.2d 942, 948 (2d Cir. 1975); *Adamsons v. American Airlines, Inc.*, 58 N.Y.2d 42, 48, 457 N.Y.S.2d 771, 775, 444 N.E.2d 21 (1982).

Nevertheless, in order to avoid relying upon form over substance, the Court conducts its own review of the record before granting the motion for summary judgment.  In conducting this review, the Court assumes that Lozada's failure to file any response implies that her deposition is the only evidence she has available to dispute Delta's version of events.  By conducting its own analysis of the record, this Court does not abstain from applying Local Rule 56.1 or excuse Lozada's failure to comply.  *See Holtz*, 258 F.3d at 73 ("[W]e take our cue from the district court, in whose discretion lay the initial determination not to apply Local Rule 56.1.").

B.     Preemption

1.     Preemption by Airline Deregulation Act ("ADA")

Under the ADA, "States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or *service* of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1) (emphasis added). Since common-law tort claims, such as negligence, are included within the meaning of the ADA, the relevant inquiry is whether the removal of a passenger from an aircraft is included within the scope of the term "service." *See American Airlines Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1994); *see also Weiss v. El Al Isr. Airlines*, 309 F. App'x 483, 484 (2d Cir. 2009); *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 362 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 7 (2d Cir. 2009).

To determine the scope of service, courts in this district apply the three-part test articulated in *Rombom v. United Air Line*s, *Inc.*, 867 F. Supp. 214, 221 (S.D.N.Y. 1994). Under this test:

> The Court must first determine whether the activity at issue in the claim is a service. If the activity is deemed to be a service, the court must then ascertain whether the claim affects the airline service directly or tenuously, remotely, or peripherally. Finally, the Court must determine whether the underlying tortious conduct was reasonably necessary to the provision of the service.

*Weiss v. El A. Israel Airlines, Ltd.*, 471 F. Supp. 2d 356, 361 (S.D.N.Y. 2006) (quoting *Galbut v. American Airlines, Inc.*, 27 F. Supp. 2d 146, 152 (E.D.N.Y.1997)). The first prong of *Rombom* "rests heavily on the extent to which the activity in question is ordinary and relates directly to air travel." *Weiss*, 471 F. Supp. 2d at 361. There are few acts more fundamental to the service of air travel than the decision by an airplane crew whether or not to transport a passenger. *See Ruta*, 322 F. Supp. 2d at 400-01 ("[T]he Captain's decision to refuse to transport Plaintiff

constitutes a "service" under the 1978 Act."); *see also Rombom,* 867 F. Supp. at 224 ("[T]he decision to have a passenger arrested may be a service if it is the only way to remove a passenger who refuses to disembark."). The removal of Lozada from the airplane thus fulfills the requisite direct relationship, and the first *Rombom* prong is satisfied.

The second prong asks whether the "plaintiffs' claims go directly—not remotely or tenuously—to the poor treatment they received while the airline was rendering that service." *Weiss*, 471 F. Supp. 2d at 361. Since Lozada's claim of negligence pertains exclusively to the fact that she was removed from the plane, proximity is satisfied. *See Ruta*, 322 F. Supp. 2d at 401 ("[T]he alleged emotional and physical harm suffered by Plaintiff was a direct result of the Captain's decision to have Plaintiff removed from the plane.").

Finally, the third prong of *Rombom* considers whether the reaction by the airline was "reasonably necessary" to the provision of the service. *Rombom*, 867 F. Supp. at 222. In application, this prong exempts from preemption only those actions classifiable as "outrageous or unreasonable." *Id*. at 223; *see also Farash*, 574 F. Supp. 2d at 366; *Weiss*, 471 F. Supp. 2d at 361; *Ruta*, 322 F. Supp. 2d at 401; *Galbut*, 27 F. Supp. 2d at 152. Courts have deemed conduct outrageous or unreasonable where the plaintiff was arrested, *see Peterson v. Cont'l Airlines, Inc.*, 970 F. Supp. 246, 251 (S.D.N.Y. 1997); *see also Rombom*, 867 F. Supp. at 224, discriminated against on the basis of his or her inclusion within a protected class, *see Peterson*, 970 F. Supp. at 251, or physically injured, *see Trinidad v. Am. Airlines, Inc.*, 932 F. Supp. 521, 526 (S.D.N.Y. 1996). However, none of these circumstances is alleged in the instant case. Lozada admits that she was not handcuffed, taken to jail, or removed from the airport by security. (Dkt. No. 20-2 at pp. 36, 50.) Further, Lozada admits that she was not physically injured (*id*. at p. 45), and the

complaint includes neither a charge nor mention of discrimination nor a suggestion that she is a member of a protected class.[3]  (Dkt. No. 1 at pp. 7-8.)

Beyond the actual removal from the airplane, the only additional element of Lozada's allegations is that she was treated in a "rude" manner.  (Dkt. No. 20-2 at pp. 34-36, 40, 46.)  But rudeness is insufficient to exempt otherwise preempted actions.  *See Rombom*, 867 F. Supp. at 223 ("[C]laims based on the rudeness of the flight crew do not, however, survive the scrutiny of the third prong."); *see also Weiss*, 471 F. Supp. 2d at 362 ("[R]ude and unprofessional actions. . . [do] not rise to the necessary level of outrageousness."); *Ruta*, 322 F. Supp. 2d at 401 ("Plaintiff's state tort claims that are based on Osorio's 'rudeness' are preempted.").  In any event, with respect to each instance in which Lozada claims that she was treated rudely, the source of the alleged maltreatment was the Port Authority police officers, not any employee of Delta.  (Dkt. No. 20-2 at pp. 34-36, 40, 46.)

In one case, the Eastern District of New York held that an airline's decision to cancel already ticketed flights was not preempted by the ADA.  *See In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 469-70 (E.D.N.Y. 2007) (holding that "an airline's total and indefinite refusal to transport ticketed passengers" is not "reasonably necessary to the provision of . . . services").  That case is distinguishable.  Here, Lozada has failed to create a genuine dispute of fact as to whether Delta had reason to remove her from the airplane.  Her deposition—which was submitted by Delta—is the only evidence that could possibly support her

---

[3] In Plaintiff's deposition (Dkt. No. 20-2 at 50), she states a fleeting reference to "possible discrimination," but without any actual charge alleged.  Furthermore, she states that the source of the "possible discrimination" was the "the cop" who removed her from the plane, not the Delta employees.  (*Id.*)

version of events and preclude summary judgment.[4] Yet her deposition does not present controverting facts; it merely consists of a few general statements that she did not know what was happening. (Dkt. No. 20-2 at pp. 30-31 (repeatedly stating that nothing "out of the ordinary" happened); *id.* at p. 39 ("I don't know. I got on that plane, and I had no problems. It was real nice. I said hello and everything. I don't know.").) In fact, she even acknowledges at one point that her behavior was potentially inappropriate. (*Id.* at p. 43 ("I said [to airport employees after being removed from the plane] if I was a brute or something I apologize.").)

Although the Court cannot resolve issues of credibility on summary judgment, Lozada's self-serving, incomplete, and inconsistent recollection is not sufficient to create a genuine dispute of fact in light of Delta's documented evidence. *See Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) ("[T]he only 'evidence' cited in plaintiffs' brief is their own self-serving testimony and [the] plaintiffs have 'made no attempt . . . to square their own speculative, and subjective, testimony with the hard evidence adduced during discovery. Such evidence is insufficient to defeat summary judgment.'") (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)); *Desir v. Bd. of Co-op Educ. Servs. (BOCES) Nassau Cnty.*, 803 F. Supp. 2d 168, 176 (E.D.N.Y. 2011) ("[P]laintiff's proffered evidence is indeed based on . . . self-serving deposition testimony, and naked denials. Plaintiff interposes this against Defendant's proffered written evidence—in the form of written evaluations, emails, and memoranda—and testimonial evidence taken by deposition as to various issues of fact. In response to much of this evidence, Plaintiff simply responds that he 'does not recall.'"). Since Delta has submitted the deposition of FA Meadows, an affidavit from the Captain, as well as pre-litigation reports and emails that describe the events in detail, Lozada's lone deposition is insufficient to raise a genuine dispute of fact.

---

[4] Lozada did not make any submissions in connection with this motion besides her memorandum in opposition.

Accordingly, even if the facts set forth in Lozada's deposition are accepted as true, Delta's removal was not outrageous or unreasonable and was reasonably necessary to the service of the air carrier. As such, her claim is preempted by the ADA.

### 2. Preemption by Federal Aviation Act ("FAA")

Lozada's negligence claim is also preempted by the FAA. As previously noted, "an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902. The determination that a passenger might pose a safety risk is not subject to legal challenge unless it was "arbitrary and capricious." *Ruta*, 322 F.Supp.2d at 397 (citing *Schaeffer*, 54 F. Supp. 2d at 351); *see also Williams,* 509 F.2d at 948; *Adamsons,* 58 N.Y.2d at 48. That exception is not applicable in this case.

In judging whether an act was arbitrary and capricious, the court must analyze "the facts and circumstances as known by the decision-maker at the time he formed his opinion," *Ruta*, 322 F. Supp. 2d at 397 (quoting *Norman v. Trans World Airlines, Inc.*, No. 98 Civ. 7419 (BSJ), 2000 WL 1480367, at *3 (S.D.N.Y. Oct.6, 2000)), and must grant the decision-maker substantial discretion to reject a passenger "if exercised in good faith and for a rational reason." *Ruta*, 322 F. Supp. 2d at 397; *see also Adamsons*, 58 N.Y.2d at 47. Further, since such decisions are frequently made in the narrow time period before takeoff, "[t]here are times when legitimate safety reasons require that the decision be based entirely on a prospective passenger's appearance and behavior." *Id.* Finally, since the captain is in command of the aircraft but he has less intimate interactions with passengers than his crew, a "captain of an airplane is entitled without further inquiry to rely upon a flight attendant's representations that a . . . passenger might distract the flight attendant from performing his or her safety-related duties." *Ruta*, 322 F.

Supp. 2d at 397-398 (quoting *Christel v. AMR Corp.*, 222 F. Supp. 2d 335, 340 (E.D.N.Y. 2002)).

Lozada admits that she consumed alcoholic drinks at multiple establishments prior to boarding the plane, and she does not deny that she was intoxicated, even though she was given the opportunity by opposing counsel to refute such a claim. (Dkt. No. 20-2 at pp. 28, 38-40.) Moreover, FA Meadows attests that Lozada had difficulty walking, leaned on the gate podium as if unable to stand, slurred her speech, and smelled of alcohol. (Dkt. No. 20-3 at pp. 15, 18, 24.) Lozada failed to controvert any of these allegations. In the absence of any evidence that creates a genuine issue of fact, the Court cannot consider the flight attendant's discretionary decision to classify Lozada as a potential safety risk as arbitrary and capricious.

In arriving at this decision, it is ultimately irrelevant whether Lozada was actually intoxicated at the time of the incident. Rather, it is only important that the flight attendant had reason to belief that she was intoxicated. In reviewing the record, most of the legitimate reasons offered by Delta for arriving at such a conclusion are left uncontested, and Lozada's general testimony that she did nothing wrong does not create a genuine issue of fact.

## IV. Conclusion

For the foregoing reasons, Delta's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Entry 19 and to close this case.

SO ORDERED.

Dated: June 17, 2014
New York, New York

_____
J. PAUL OETKEN
United States District Judge